743 So.2d 304 (1999)
STATE of Louisiana
v.
Sterling MAYER, Jr.
No. 98-KA-1311.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 1999.
*306 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Laurie A. White, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and MARION F. EDWARDS.
GOTHARD, Judge.
The defendant, Sterling Mayer, Jr., was convicted of attempted simple burglary of an inhabited dwelling, in violation of LSA-R.S. 14:27:62.2, and he was sentenced to six years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Following sentencing, the defendant was adjudicated a quadruple felony offender and he received an enhanced sentence of ten years imprisonment at hard labor. The defendant now appeals. For the following reasons, we affirm his conviction for simple burglary of an inhabited dwelling, and the adjudication of fourth offender status on the multiple offender bill of information. We vacate the enhanced sentence and we remand the matter for re-sentencing on the multiple bill.
At approximately 6:15 a.m. on September 4, 1996, Mrs. DeVillier, who lived at 1513 Mimosa in Marrero, heard two loud knocks. She saw a man on the patio, coming towards the french door with a yellow towel. She testified that she was no more than ten feet away from where the defendant stood in her back yard, that she was able to see his face. Mrs. DeVillier went into her bedroom and told her husband that someone was on their patio. She remained in the bedroom and called 911 while her husband and her son went to check the patio. As she was on the telephone with the 911 operator, Mrs. DeVillier heard noises that sounded like glass being punched in. Mrs. DeVillier did not leave her bedroom until the police arrived. Once they arrived and she exited her bedroom, she discovered that one of the glass panes in her french door had been punched in.
While his wife was dialing 911, Mr. Aubrey DeVillier woke his son, Jeff DeVillier. The two men armed themselves and searched around their house. Jeff DeVillier found the defendant sitting on the curb. As the defendant looked like he was about to try to run away, Jeff DeVillier pointed his rifle at the defendant to prevent the defendant from escaping while they waited for the police to arrive. According to Jeff DeVillier, when he pointed his gun at the defendant and asked him what he was doing, the defendant said "no, man, it wasn't me."
Mrs. DeVillier testified that after the police arrived, she looked out of her window and saw "the man standing along the cop car, against it and that was the same man that I had seen in the back yard" and that she was positive that he was the perpetrator. A yellow towel was found wrapped around a brick, which was found in the back yard. The yellow towel belonged to Mrs. DeVillier, and had been left outside. There was also a pile of bricks in Mrs. DeVillier's back yard.
Officer Phillips, who was employed with the Jefferson Parish Sheriff's Office at the time the crime was committed, testified that he arrived at the scene at approximately 6:35 a.m. and found the defendant, *307 whom he identified in court, in the victims' custody. He inspected the victims' home and discovered the glass pane that was partially removed from the french door. Subsequent investigation revealed that the defendant did not live in the victims' neighborhood.
The defendant presented no evidence.
In his first assignment of error, defendant alleges that insufficient evidence was presented to support the verdict. He contends that the State failed to prove that the defendant was the person responsible for committing the crime. In brief, defendant admits that Mrs. DeVillier testified that he was the man whom she saw both before and after the glass pane in her french door was punched out, but he claims that because the district attorney showed Mrs. DeVillier a photograph of him before she gave this testimony, her testimony at trial was tainted.
When assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Rosiere, 488 So.2d 965 (La.1986).
Regarding circumstantial evidence, LSA-R.S. 15:438 provides that "assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
It is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence. Rosiere, 488 So.2d at 968; State v. Sampson, 95-58, p. 7 (La.App. 5 Cir. 5/30/95), 656 So.2d 1085, 1088, writ denied, 95-1665 (La.11/27/95), 663 So.2d 730. It is the role of the fact-finder to weigh the respective credibilities of witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review. State ex rel Graffagnino v. King, 436 So.2d 559, 563 (La.1983).
We also note that the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Battle, 93-900 (La.App. 5 Cir. 3/29/94), 635 So.2d 337, 340, writ denied, 94-1592 (La.10/28/94), 644 So.2d 649.
The defendant's sole complaint on appeal concerns whether he was the perpetrator. Although the defendant complains that "there was no testimony presented that Mrs. DeVillier identified the appellant at the scene as the person whom she saw creeping around the house earlier that morning," the record provides otherwise. Mrs. DeVillier testified that after the police arrived she looked out of the windows of her home and saw "the man standing along the cop car, against it and that was the same man that I had seen in the back yard." When asked whether she was certain that the man against the police vehicle was the same man she saw in her back yard, Mrs. DeVillier responded affirmatively. Officer Phillips testified that he arrived at the scene at approximately 6:35 a.m. and found the defendant, whom he identified in court, in the victims' custody. Therefore, while Mrs. DeVillier may not have identified the defendant pursuant to any police procedures on the morning of the crime, her testimony establishes that immediately following the commission of the crime, she made sure that the man taken into custody was, in fact, the man whom she had seen creeping around her house earlier that morning.
Additionally, Mrs. DeVillier testified unequivocally that the defendant was the man whom she saw outside her french door at approximately 6:15 a.m. on September 4, 1996. She testified that she was no more than ten feet away from where the defendant stood in her back yard, that she was able to see his face, and that she *308 was positive that he was the perpetrator. It is true that this testimony was given after she allegedly saw the defendant's photograph in court. However, Mrs. DeVillier explained that during the trial, the district attorney was about to show her a photograph of the defendant, but that she "didn't really even look at it [the photograph of the defendant]." She testified further she had "never seen it [the photograph of the defendant.]"
We find that the victim's identification of the defendant during the trial was not "tainted" in any way, and that the State negated any reasonable probability of misidentification. The evidence shows that the defendant was the person responsible for committing the crime, and therefore the State presented sufficient evidence to support the defendant's conviction.
In his second assignment of error, the defendant alleges that the trial court erred in sentencing appellant under the Multiple Bill of Information as a fourth felony offender. Defendant contends that the State failed to prove each of appellant's prior arrests, convictions, and sentences as required by law. Defendant further contends, should this court find the multiple offender adjudication valid, that his sentence as a multiple offender is legal, because the trial court had the authority to impose such a sentence.
First, defendant generally claims that the State did not present sufficient evidence during the multiple offender hearing to prove that he was convicted and sentenced on each of the alleged predicate offenses listed in the multiple offender bill of information. During the multiple offender hearing, the State introduced certified copies of the arrest registers of each of the predicate offenses, and also the entire court records for each of the predicate offenses. The defendant's attorney did not object to any of the evidence presented, and he did not object to the defendant's adjudication as a fourth felony offender. We find that the State presented sufficient evidence to show that the defendant had three prior felony convictions.
Defendant further argues that it is impossible to determine from the record whether the alleged predicate offenses "are properly aligned." In essence, he complains that it is impossible to determine if the alleged predicate offenses (1) meet the sequential requirement and (2) fall within the cleansing period. However, this issue was not preserved for appellate review because defendant did not include this complaint in a response to a multiple bill and he did not object on this basis during the multiple offender hearing. LSA-R.S. 15:529.1(D)(1)(b); State v. Girod, 96-660, pp. 10-11 (La.App. 5 Cir. 11/25/97), 703 So.2d 771, 776-777, writ denied, 98-0244 (La.6/19/98), 719 So.2d 480, State v. Radacker, 98-434 (La.App. 5 Cir. 11/25/98), 722 So.2d 1093.[1]
The State requests that this Court correct the defendant's illegally lenient sentence.[2] However, we need not address this issue, because an error patent exists that requires that the defendant's enhanced sentence is null and void. The October 30, 1998 commitment/minute entry present in the record reflects that the trial judge vacated the defendant's original sentence, which was six years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. However, the transcript from October 30, 1998 does not reflect that the defendant's original sentence was vacated prior to the imposition of his enhanced sentence. Where there is a discrepancy between the transcript and the minute entry, the transcript will prevail. State v. Lynch, 441 So.2d 732 (La.1983).
*309 Where the original sentence on the underlying offense has not been vacated at the time of defendant's sentencing as an habitual offender, the original sentence remains in effect and the subsequent sentence as an habitual offender is null and void. State v. London, 98-65, (La.App. 5 Cir. 5/27/98), 712 So.2d 287. This is an error patent. State v. Jackson, 95-423, p. 6 (La.App. 5 Cir. 11/15/95), 665 So.2d 467, 469.
Accordingly, we vacate defendant's enhanced sentence and we remand the case for re-sentencing.
The defendant also requests that we review of the entire record for errors patent. We have conducted an error patent review pursuant to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) and find no other errors which warrant our consideration.
For the above discussed reason, we affirm defendant's conviction for attempted simple burglary of an inhabited dwelling and the adjudication on the multiple bill. We vacated the enhanced sentence and remand the matter for re-sentencing on the multiple bill.
CONVICTION AFFIRMED; ADJUDICATIONS A MULTIPLE OFFENDER AFFIRMED; SENTENCE VACATED; MATTER REMANDED.
CANNELLA, J., CONCURS IN PART AND DISSENTS IN PART.
CANNELLA, J., CONCURRING IN PART AND DISSENTING IN PART.
I concur in the majority opinion insofar as it affirms the conviction of the defendant of attempted simple burglary of an inhabited dwelling, vacates his sentence as a multiple offender and remands for resentencing. However, I dissent from the majority ruling "affirming the multiple offender adjudication."[1] This latter ruling is based on the majority's refusal to review the arguments by defendant that the State failed to present sufficient evidence to prove that his prior convictions (1) come within the "cleansing period" set out in La. R.S. 15:529.1 and (2) are properly "sequenced," that is, that he was convicted for the first offense before he committed the second offense, and so on. Therefore, I dissent from the majority's reliance on State v. Girod, 96-660 (La.App. 5th Cir. 11/25/97), 703 So.2d 771, writ denied, 98-244 (La.6/19/98), 719 So.2d 480 and State v. Radacker, 98-434 (La.App. 5th Cir. 11/25/98), 722 So.2d 1093, writ denied, 99-0031 (La.4/30/99), 741 So.2d 11, in support of the refusal to consider defendant's arguments, since they directly conflict with other cases of this circuit which reach a contrary result. State v. Raymond, 98-KA-119, (La.App. 5th Cir. 8/25/98), 718 So.2d 1010; State v. Brown, 98-938 (La.App. 5th Cir. 3/10/99), 732 So.2d 566.
The defendant assigned as error on appeal the State's failure to adequately prove that his prior convictions come within the cleansing period. Citing La. R.S. 15:529.1(D)(1)(b), the majority repeats the error of Girod and Radacker by concluding that the defendant has not preserved this issue for appellate review because he did not assert it in response to the multiple bill and did not object to it during the hearing.
It is well settled that the State has the burden of proof on any issue of fact of the multiple bill and particularly that the prior convictions come within the cleansing period designated in the statute. La. R.S. 15:529.1(D)(1)(b); State v. Raymond, 98-119 (La.App. 5th Cir. 8/25/98), 718 So.2d 1010; State v. Humphrey, 96-838 (La.App. *310 5th Cir. 4/29/97), 694 So.2d 1082. The part of the statute on which the majority relies, La. R.S. 15:529.1(D)(1)(b), creates a presumption of regularity of the judgment of the prior convictions unless the defendant files a written response to the bill of information. The provision has nothing to do with the State's burden to prove that the prior convictions come within the cleansing period. To apply this provision to the cleansing issue and hold that the defendant must raise this objection in answer to the multiple bill or waive his right to do so is error since the defendant cannot know in advance of the presentation of the State's case what proof the State will put forth to meet its burden. Likewise, I find no basis for the majority's holding that the defendant must object in the trial court to the insufficiency of the State's evidence in order to have the issue preserved for appellate review. The application of such a principle would completely shift the burden of proof from the State to the defendant. The Constitution prohibits the shifting of this burden of proof to defendants in criminal cases.
Moreover, there is a split in our circuit among different panels on this very issue. In State v. Raymond, supra, and State v. Brown, supra, as well as other cases, this court has held that the absence in the record of sufficient evidence to meet the State's burden of proof of the facts supporting the multiple bill, particularly cleansing, is an error reviewable on appeal not requiring objection by the defendant. While I find that Raymond and Brown are the better view and should be followed instead of Girod and Radacker, I concede that there is a split in our circuit.
In "affirming the multiple offender adjudication," the majority does a disservice to the State. Since the sentence has been vacated, the State on remand could correct any deficiencies in its proof. But, rather than taking this judicially efficient action, the majority "affirms the multiple offender adjudication" implying that the record on that issue is closed and the trial court may only resentence the defendant. What the majority does not consider is that, in view of the unresolved split in our circuit on the cleansing issue, the next panel could follow Brown and Raymond and again vacate the sentence and remand because the State failed to prove the facts of the multiple bill, that is, that the prior convictions come within the cleansing period established by law.
Accordingly, I dissent from the majority reasoning and refusal to consider the issue concerning the adequacy of the proof put forth by the State as to whether the defendant's prior convictions come within the cleansing period. The issue should be considered and resolved now on appeal, allowing the State to correct all deficiencies in the record on remand.
NOTES
[1] Writs were filed with the Louisiana Supreme Court on January 6, 1999.
[2] In sentencing the defendant to ten years at hard labor, the trial court relied on State v. Dorthey, 623 So.2d 1276 (La.1993) and deviated below the statutory minimum sentence of twenty years required pursuant to La. R.S. 15:529.1.
[1] It is unclear what judgment the majority is affirming by this ruling. La. R.S. 15:529.1 is solely a sentence enhancement statute. There is no judgment rendered in these proceedings, only an enhanced sentence, which, in this case, is being vacated. As stated by the Supreme Court in State v. Dorthey, 92-3120 (La.9/10/93), 623 So.2d 1276, "a ruling at a multiple offender hearing is not `a definitive judgment' but merely `a "finding" ancillary to the imposition of sentence.'"