833 So.2d 396 (2002)
STATE of Louisiana
v.
Patrick A. CONNER.
No. 02-KA-363.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 2002.
*399 Paul M. Cullen, New Orleans, LA, for Patrick A. Conner, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Thomas J. Butler, Assistant District AttorneysAppellate Counsel, Thomas S. Block, Assistant District AttorneyTrial Counsel, Gretna, LA, for State of Louisiana, Plaintiff-Appellee.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On September 1, 1999, the Jefferson Parish District Attorney filed a bill of information charging defendant, Patrick Conner, with fifth-offense operating a vehicle while intoxicated (DWI), in violation of La. R.S. 14:98E. The bill of information alleged that Patrick Conner had four prior DWI convictions, which occurred on or about May 23, 1990, September 17, 1991, July 31, 1997, and September 9, 1997. Defendant was arraigned on October 8, 1999, and pled not guilty.
On January 26, 2000, defendant filed a Motion to Quash the Bill of Information, arguing that the State did not possess the evidence necessary to prove the alleged predicate convictions. On March 21, 2000, the State amended the original bill of information to add a second conviction that was obtained on September 17, 1991. On March 21, 2000, defendant was arraigned on the amended bill, and pled not guilty.
On April 25, 2000, defendant filed another Motion to Quash/Suppress the Evidence of Prior Offense, specifically claiming that the State did not possess sufficient evidence to show that the predicate guilty pleas obtained on May 23, 1990, September 17, 1991, and September 9, 1997 were knowingly and voluntarily made. On May 15, 2000, the trial court heard the motion and took the matter under advisement. On May 17, 2000, the trial judge denied defendant's motion.
Defendant filed an application for supervisory review with this Court, challenging the trial court's ruling. On June 27, 2000, this Court, in a two-to-one ruling granted the writ in part, finding that the trial court had erred in failing to suppress the convictions obtained on May 23, 1990 and September 9, 1997.[1] The panel denied the writ regarding defendant's September 17, 1991 conviction.
The State sought supervisory review from the Louisiana Supreme Court, challenging this Court's ruling. On October 13, 2000, the supreme court, which granted writs in part and denied writs in part, stated:
The ruling of the Court of Appeal, Fifth Circuit, regarding defendant's September 9, 1997 conviction is reversed. The record reflects the State of Louisiana satisfied its burden under State v. Carlos, 98-1366 (La.7/7/99), 738 So.2d 556. Accordingly, the ruling of the trial court is hereby reinstated as to the September 9, 1997 conviction only.
State v. Conner, 00-2061 (La.10/13/00), 771 So.2d 641.
On June 1, 2001, after the defendant waived his right to a jury trial, he was tried on the amended charge of fifth-offense DWI.[2] That day, the trial judge *400 found the defendant guilty as charged. Defendant made an oral motion for new trial, which the court denied.[3]
On July 25, 2001, the trial judge sentenced defendant to ten years at hard labor, without benefit of parole, probation, or suspension of sentence. Additionally, the trial court imposed a fine of five thousand dollars, and ordered defendant's vehicle seized, impounded, and sold at auction. On July 30, 2001, defendant filed a Notice of Intent to Appeal, which was subsequently granted.
On appeal, defendant argues that the trial court erred in limiting defense counsel's cross-examination on matters related to DWI investigation; the trial court erred in allowing the prosecutor to question a defense witness about other bad acts allegedly committed by him; the evidence was insufficient to support his conviction; and his sentence was unconstitutionally excessive and constituted cruel and unusual punishment. We have thoroughly reviewed his assignments of error and, for the foregoing reasons, we affirm his conviction and sentence.

Facts
At defendant's trial, Corporal Ronald Furlow of the Causeway Police testified that he was working a routine patrol on the Causeway Bridge on July 10, 1999. At approximately 5:42 p.m. that evening, Corporal Furlow saw a green Toyota Camry traveling at a high rate of speed near the two-mile marker on the southbound portion of the bridge. He saw the Camry overtake four or five cars at a rate of speed that obviously exceeded the posted speed limit on the bridge, which he testified is 55 miles per hour. Furlow activated the radar in his police vehicle and clocked the car's speed at 68 miles per hour.
Corporal Furlow followed the Camry to the end of the bridge, activated his car's emergency lights and pulled the Camry over at the south toll plaza, with the intention of issuing a traffic citation to the driver. Furlow testified that when the defendant, Patrick Conner, exited the Camry, he stumbled, grabbed the side of the Camry to maintain his balance, then staggered toward Furlow's police car. As the defendant approached, Furlow detected a strong smell of alcohol on defendant's breath and about his person. Defendant also slurred his words when he spoke to the officer.
Furlow asked defendant if he would take a field sobriety test. Defendant responded that his attorney had advised him to refuse any such test. Furlow then placed defendant under arrest and informed him of his Miranda[4] rights, which defendant indicated he understood. Furlow testified that defendant did not request an attorney at that point and did not refuse to answer any of Furlow's questions.
Furlow proceeded, with the defendant, to the Causeway Police station at the south toll plaza, with the intention that defendant would undergo an Intoxilyzer test. After Furlow placed defendant in the Intoxilyzer room with the Patrol Supervisor on duty, Sergeant Russell Simmons, Furlow ran a check on defendant's driver's license and found that it had been suspended. *401 At 6:05 p.m., Furlow read defendant his rights with regard to the Intoxilyzer procedure. Defendant signed the form acknowledging that he had been read his rights and understood those rights. Simmons also signed the form.
Furlow then questioned the defendant about any physical defects that defendant might have and defendant responded that he had none. Furlow asked whether defendant was taking any medication and defendant responded that he was not. When asked whether he had been drinking, defendant responded that he had consumed two glasses of wine with lunch. Both Furlow and Simmons testified that during the interview, the smell of alcohol in the room was strong. Finally, after Furlow completed the questioning, Simmons twice asked defendant to submit to an Intoxilyzer test. Defendant refused both requests to take the test.
William Schilling, a longtime friend of the defendant, testified on his behalf. Schilling stated that, on July 9, 1999, defendant picked him up at his house in Metairie and the two men drove to defendant's house on the Northshore, where they stayed that night. On the afternoon of July 10, 1999, Schilling and the defendant had lunch at the home of a mutual friend, Karen Serpas. According to Schilling, defendant had one or two glasses of wine with lunch. Schilling testified that he did not see defendant have any more alcoholic beverages after lunch. The two men remained at Ms. Serpas' house until about 5:00 pm or 6:00 pm that evening.
Schilling testified that defendant took the Causeway to bring Schilling back to his house in Metairie. While they were on the Causeway Bridge, defendant was stopped by police. According to Schilling, there were two officers. One of them asked defendant to get out of the car, and defendant complied. Schilling was told to stay in the car.
At one point, he saw one of the officers place the defendant in handcuffs. An officer told Schilling that defendant was being arrested for DWI. One of the officers told Schilling he could take custody of the car, but that he would have to take a sobriety test before he would be allowed to drive it. Schilling submitted to a test and was allowed to take custody of defendant's vehicle.

DISCUSSION
By this assignment, defendant argues that the State failed to prove his guilt beyond a reasonable doubt. Specifically, defendant asserts that the evidence was insufficient to show he was legally intoxicated and that the prosecution failed to prove he was the same person who was convicted of the prior DWI offenses alleged in the bill of information.
When issues are raised on appeal regarding the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Noil, 01-521, p. 12 (La.App. 5 Cir. 12/26/01), 807 So.2d 295, 305. Therefore, we will examine defendant's assignment of error regarding the sufficiency of the evidence first, and then, if necessary, address the defendant's remaining assignments of error.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential *402 elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. State v. Lapell, 00-1056 (La.App. 5 Cir. 12/13/00), 777 So.2d 541, 545.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438.
A different standard is applied on appellate review. The Louisiana Supreme Court recently commented:
On appeal, the reviewing court `does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events'.... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
At the time of the underlying offense, LSA-R.S. 14:98 provided, in relevant part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
(c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.
In order to convict an accused of driving while intoxicated, the prosecution need only prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Bourgeois, 00-1585, p. 6 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 853. It is not necessary that a DWI conviction be based upon a breath or blood alcohol test; the observations of the arresting officer may be sufficient to establish the defendant's guilt. State v. Landry, 01-0784, p. 5 (La.App. 5 Cir. 12/12/01), 804 So.2d 791, 794.
Intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify. Bourgeois, 785 So.2d at 853. Some behavioral signs, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. What behavioral *403 manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Id. Refusal to take the Intoxilyzer test is admissible as evidence of intoxication. LSA-R.S. 32:666A(3); State v. Loisel, 01-2018 (La.App. 4 Cir. 3/6/02), 812 So.2d 822.
At trial, Corporal Furlow testified that, on July 10, 1999, defendant was exceeding the speed limit, although he was not driving erratically. Furlow testified that several factors, which were evident after Furlow stopped the defendant for speeding, led Furlow to conclude that defendant was intoxicated. First, when defendant exited his car, he swayed, and grabbed the side of the car to steady himself. Second, when defendant walked toward Furlow after exiting his car, he staggered. Third, defendant smelled strongly of alcohol and his speech was slurred.[5] Finally, defendant refused several requests to submit to an Intoxilyzer test, indicating that his lawyer had advised him not to submit to such tests if he was stopped.
Furlow testified that, as of the day he arrested defendant, he had made a approximately 25 to 30 DWI arrests. Furlow stated there is a distinction between the behavior of someone who is nervous about being stopped by police, and the behavior of one who is intoxicated. If a person is slurring his words and swaying from side-to-side, Furlow attributes that behavior to alcohol or drug use.
Moreover, during questioning at the police station, defendant stated he did not suffer from any physical impairments and that he was not on any medication. He also admitted that he drank two glasses of wine at lunch and even admitted that he was under the influence of alcohol. (R., p. 172). Sergeant Russell Simmons also stated that when he met with defendant at the south toll plaza police station, he detected the smell of alcohol and defendant slurred his words.
Our review of the entire record support's the trial judges determination that the defendant was legally intoxicated on July 10, 1999, and, thus, guilty, beyond a reasonable doubt, of operating a vehicle while intoxicated. While defendant's longtime friend testified that defendant did not stagger when he exited his car after he was stopped, he did admit that the defendant had two glasses of wine earlier in the day. Moreover, the credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be re-weighed on appeal. State v. Ledet, 00-1103, p. 16 (La.App. 5 Cir. 7/30/01), 792 So.2d 160, 171.
Next, defendant argues that the State did not provide sufficient proof that he was the same person who was convicted of the alleged predicate DWI offenses. At trial, the State alleged that the defendant was convicted of DWI offenses on the following dates:
1) September 17, 1991: Twenty-Second Judicial District Court, St. Tammany Parish, Docket number 199414, Division "G";
2) September 17, 1991: Twenty-Second Judicial District Court, St. Tammany Parish, Docket number 200632, Division "G";
3) July 31, 1997: Twenty-Second Judicial District Court, St. Tammany Parish, Docket number 268745, Division "G";

*404 4) September 9, 1997: First Parish Court, Jefferson Parish, Docket number F-1040395, Division "B".
The Louisiana Supreme Court in State v. Carlos, 98-1366, p. 5 (La.7/7/99), 738 So.2d 556, 558, recognized a conflict in its prior jurisprudence on the issue of whether the recidivist portions of the DWI statute constitute essential elements of the offense. The Carlos court noted, however, that "the present interpretation holds the recidivist provisions to be `elements' of the DWI statute," and not simply forming a sentencing mechanism. Id. Consequently, "it is clear that the burden rests on the State to prove at trial, beyond a reasonable doubt, the existence of the prior convictions and the defendant's identity as the prior offender, when charging a second, third, or subsequent offense." State v. Carlos, 98-1366 at p. 5, 738 So.2d at 558-559 (citing State v. Krause, 405 So.2d 832, 833 (La.1981)).
In determining what evidence is acceptable to prove identity in a recidivist DWI case, an analogy can be made to the evidence required to prove identity in multiple offender proceedings. To prove that a defendant is a multiple offender, the State must establish the existence of the prior felony convictions, and that the defendant is the same person convicted of those offenses. State v. Mims, 00-1507, p. 4 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766. The State may establish identity by various means, such as the testimony of witnesses to prior offenses, expert testimony matching fingerprints of the accused with those in the record of prior proceedings, or photographs contained in a duly authenticated record. State v. Manson, 01-159, p. 19 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 763.
In this case, the State introduced the testimony of witnesses to establish identity.[6] Judge Peter Garcia, now of the Twenty-Second Judicial District Court, testified that, while he was a practicing attorney, he represented defendant in the Twenty-Second Judicial District Court when defendant pled guilty to two first-offense DWIs on September 17, 1991.
Judge Garcia testified that because the offenses occurred on two different days, May 18, 1991 and July 7, 1991, they were assigned separate case numbers. Judge Garcia identified State's Exhibit 6 as the guilty plea minute entry in case number 199414, and State's Exhibit 7 as the guilty plea minute entry in case number 200632. He also identified State's Exhibit 5 as the transcript of the guilty plea colloquy, dated September 17, 1991. When shown the photograph attached to State's Exhibit 4, Judge Garcia stated that the man pictured appeared to be Patrick Conner. Further, Judge Garcia stated that he had independent recollection of the guilty pleas, because it was unusual for a defendant to plead guilty to two first offense DWIs on the same day. We find that the State provided sufficient evidence to prove that defendant was the same person who pled guilty in the Twenty-Second Judicial District Court to case numbers 199414 and 200632.[7]
*405 In addition, August Hand, an attorney who has known defendant for five years, testified that he represented defendant on July 31, 1997 in his guilty plea to first offense DWI in case number 268745 in the Twenty-Second Judicial District Court in St. Tammany Parish. Hand identified State's Exhibit 1 as a certified copy of the transcript of those proceedings, and State's Exhibit 2 as a certified copy of the court minutes. Hand identified defendant as the man pictured on State's Exhibit 3, a "Suspect Rap Sheet" bearing the name Patrick Conner.
While defendant correctly notes that the transcript shows that defendant gave Patrick Hand as his attorney's name and Patrick Hand is named as defendant's counsel on the transcript's cover page, August Hand explained that these were errors, and that he, in fact, represented defendant at his guilty plea on July 31, 1997. He surmised that Patrick Hand, his cousin, represented another defendant in the same court on that day. Indeed, the transcript reflects that Patrick Hand made an appearance on behalf of another defendant that day. Moreover, the minute entry indicates that August Hand represented defendant. We find that the evidence, as a whole, shows that defendant was the same person who pled guilty to first offense DWI in case number 268745 on July 31, 1997.
Likewise, Anthony Glorioso testified that he has practiced law for 30 years, and has known defendant since they went to high school together. Although he recalled representing defendant in First Parish Court for Jefferson Parish on a second-offense DWI charge, Glorioso did not initially remember the date of that guilty plea. After refreshing his recollection by reviewing State's Exhibit 4, which was identified as a certified copy of the record in case number 1040394 in First Parish Court, Glorioso noted that the plea was made on September 9, 1997. Further, Glorioso identified his own and defendant's signatures on the guilty plea form and identified the man pictured in a photograph attached to State's Exhibit 4 as defendant. We find that the evidence was sufficient to show that defendant was the same person who pled guilty to second-offense DWI in First Parish Court for Jefferson Parish, case number 1040394.
After reviewing the entire record, we find that the State introduced sufficient evidence for any rational trier of fact, viewing that evidence in the light most favorable to the prosecution, to find the essential elements of the crime of fifth-offense DWI beyond a reasonable doubt. Because we find that this assignment of error has no merit, we will address the remainder of defendant's arguments.
In his next assignment of error, defendant argues the trial court deprived him of his constitutional right to confrontation by limiting his cross-examination of Corporal Furlow, the State's primary witness, and by deterring him from calling an expert witness who might have aided in his defense.
The Sixth Amendment to the United States Constitution and Article I, 16 of the Louisiana Constitution of 1974 guarantee an accused in a criminal prosecution the right to confront the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1109-1110, 39 L.Ed.2d 347 (1974); *406 State v. Joseph, 01-360, p. 16 (La.App. 5 Cir. 10/17/01), 802 So.2d 735, 745. Cross-examination is the primary means by which the believability of a witness and the truth of his testimony are tested. State v. Hotoph, 99-243, p. 15 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1046, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062.
"[T]he right of confrontation is not so unlimited as to require the trial court to permit a defendant on cross-examination of a State witness to make any and all inquiries of whatever type. The inquiry must be relevant." State v. Howard, 01-0005 (La.App. 5 Cir. 4/24/01), 786 So.2d 174, 180-181, writ denied, 01-1467 (La. 4/26/02),16 816 So.2d 846. Relevant evidence is defined in LSA-C.E. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence in a criminal case is that which tends to show commission of the offense charged, and intent, or tending to negate commission and intent. State v. Bowen, 01-594 (La.App. 5 Cir. 12/26/01), 806 So.2d 749, 753. A trial judge's determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion of the trial judge and his rulings will not be disturbed in the absence of an abuse of discretion. Id.
Corporal Ronald Furlow was the State's primary fact witness. On direct examination, he testified that he was not certified to administer an Intoxilyzer test at the time of defendant's arrest, although he later earned certification. Furlow stated that, if defendant had agreed to submit to the test, Sergeant Simmons would have administered it. On cross-examination, defense counsel attempted to question Furlow regarding his knowledge of the Louisiana Department of Public Safety and Transportation's training manual for Intoxilyzer testing. Subsequently, defense counsel attempted to question Furlow about the U.S. Department of Transportation and Safety's standards for DWI investigations. The State objected to both lines of questioning. The trial judge ruled that questions regarding those agencies' standards were not pertinent or relevant.
We agree. The Intoxilyzer testing procedures contained in the training manuals were not relevant to the facts of this case. Importantly, defendant refused to submit to an Intoxilyzer test so the procedures that might have been employed if a test had been administered are irrelevant. Further, Corporal Furlow, who readily admitted that he was not certified in those procedures at the time of defendant's arrest, was not questioned about those procedures on direct examination. Moreover, although defense counsel argued during trial that he wished to elicit "expert testimony" from Corporal Furlow, he did not attempt to qualify the officer as an expert in the standards for Intoxilyzer testing.
On appeal, defendant argues that he should have been allowed to continue the line of questioning to demonstrate Furlow's lack of experience in DWI investigations. Indeed, that was the proper inquiry and both the prosecutor and defense counsel asked questions directed at that issue. Here, defendant does not show prejudice.
Defendant also complains that, prior to commencement of trial, when defense counsel voiced his intention to call an expert witness in the area of field sobriety testing, the trial judge stated:
I am going to tell you, I have a great deal of difficulty in accepting folk who come in here to do that which the trier of fact is qualified to do. So, that may be an issue when it comes before the *407 Court. The purpose of an expert is to assist the trier of fact in an area where the trier of fact needs assistance and edification. I don't know any area of the law relative to the Intoxilyzer or the field sobriety test or any other area that this trier of fact lacks the requisite experience and training by which it requires someone to come in and tell him. So, I will allow it, but I will put you on notice. If you want to address that, I know we've got counsel sitting around here, but I, in the past, have not permitted experts in those areas where I feel quite comfortable. And, we don't have a jury in here. This Court has some twenty-five years in the area, seventeen of which are as a prosecutor and nine of which are as a judge. So, I am curious as to what it is that counsel deems the Court to be deficient in.
Defendant does not specify this comment deprived him of his right of confrontation. There is no evidence in the record to show that defense counsel attempted to call an expert witness or that the trial court refused to allow such witness. In fact, it is not clear from the foregoing comments that the trial judge would have disallowed expert testimony. Further, defendant does not show that he was prejudiced. Based on the foregoing, we do not find that the defendant was deprived of his constitutional right of confrontation. This assignment of error lacks merit.
In his next assignment of error, defendant complains that the trial court erred in allowing the prosecutor to question defense witness, William Schilling, about his knowledge of defendant's prior DWI offenses because this constituted impermissible "other crimes" evidence. The State counters that the line of questioning was properly within the scope of cross-examination because Schilling gave testimony as to defendant's character and conduct.
Generally, "other crimes" evidence is not admissible to show the probability that the accused committed the charged crime because he is a "bad" person who has a propensity for this type of offense. LSA-C.E. art. 404B(1); State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916, 920. There are, however, exceptions to this rule.
LSA-C.E. art. 404A allows admission of evidence of a pertinent trait of an accused's character, such as moral quality, offered by him or by the prosecution to rebut character evidence. For this exception to apply, the requirements of LSA-C.E. art. 405 must be satisfied. Article 405 provides:
A. Reputation. Except as otherwise provided in Article 412, in all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to general reputation only. On cross-examination of the character witness, inquiry is allowable into relevant specific instances of conduct.
B. Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, such as in a prosecution for defamation or when there is a defense of entrapment, proof may also be made of specific instances of his conduct.
C. Foundation. Before a person may be permitted to testify to the reputation of another person, a foundation must be established that the witness is familiar with that reputation.
On direct examination, defense counsel briefly questioned Schilling about how long he had known defendant and established that the two were long-time friends. The majority of defense counsel's questions involved *408 Schilling's memory of the events leading up to and including defendant's arrest.
On cross-examination, the prosecutor began by questioning Schilling about his association with defendant. Schilling testified that he has known defendant since their high school days and that the two of them have socialized with each other. The prosecutor asked Schilling whether he knew that defendant had a drinking problem. The defense objected to the question and the trial judge sustained the objection.
Defendant argues that the State's ensuing line of questioning to Schilling about defendant's prior DWI arrests and convictions was improper. At trial, defense attorney did object but the trial court overruled the objection stating, in part, that the witness "has been offered ... on behalf of the defendant and testified to the defendant's character and there [sic] conduct together. The State is permitted to inquire as to his knowledge relative to certain facts and circumstances surrounding that defendant."
The prosecutor went on to ask Schilling whether he was aware that defendant had DWIs in 1977 in Gonzales, and in 1976 and 1979 in Orleans Parish. Schilling responded, "I may have heard that he had one other but I don't know where it was or any of that." Again defense counsel objected to the line of questioning. The trial judge responded:
The witness has testified that he is close friends with the defendant. He has been such since the age of 15 or 16, and has testified with respects to his knowledge of the defendant's conduct, his body movements, and so forth. The State is permitted to inquire and/or to impeach that which he has testified to with respects to his knowledge and closeness to this defendant, such that he understands his conduct and so forth, and the court deems the examination to be proper under the rules of evidence.
We find that the trial court erred in its ruling. Although defense counsel questioned Schilling briefly about how he knew defendant, and how he came to be with defendant at the time of his arrest, this background information cannot be considered character evidence. Schilling's testimony that defendant had one or two glasses of wine with lunch several hours prior to his arrest does not constitute a description of any moral quality of the defendant. Schilling was simply a fact witness, called to testify by the defense regarding his recollection of the events surrounding defendant's arrest. The State was, therefore, not entitled to cross-examine Schilling on issues of defendant's character under Articles 404A and 405.
Further, even if Schilling could be considered a character witness, the prosecutor neglected to follow the provisions of Article 405B and 405C. The prosecutor failed to lay a proper foundation for the introduction of the "other crimes" evidence. He was also not entitled to go into specific instances of conduct; only defendant's general reputation.
We find, however, that the trial court's error was not reversible. The introduction of "other crimes" evidence is subject to harmless error analysis. State v. Morgan, 99-1895, p. 5 (La.6/29/01), 791 So.2d 100, 104; State v. Charles, 00-1586, p. 6 (La.App. 5 Cir. 6/27/01), 790 So.2d 705, 709. The test for harmless error is whether the verdict actually rendered was surely unattributable to the error. State v. Johnson, 94-1379, p. 18 (La.11/27/95), 664 So.2d 94, 102. Here, the evidence at trial was such that the mention of additional DWI offenses was merely cumulative and likely did not contribute to the verdict.
*409 In his last assignment of error, defendant complains that his sentence of ten years without benefit of parole, probation, or suspension of sentence is constitutionally excessive. First, we note that defendant failed to file a motion to reconsider sentence and failed to make a specific oral objection at the time of re-sentencing. LSA-C.Cr.P. art. 881.1. Such an omission normally precludes review of a sentence on appeal. See, State v. Ewens, 98-1096, p. 10 (La.App. 5 Cir.3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. However, in the interest of judicial efficiency, we have routinely reviewed sentences for constitutional excessiveness even absent a defendant's compliance with Article 881.1. State v. Anderson, 01-789, p. 8 (La.App. 5 Cir. 1/15/02), 807 So.2d 956, 961.
The Eighth Amendment to the United States Constitution and Article I, 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992). Even a sentence which falls within the statutory limits may be excessive under certain circumstances. State v. Robicheaux, 412 So.2d 1313, 1319 (La.1982).
A reviewing court will not set aside a sentence as excessive if the record supports the sentence imposed. LSA-C.Cr.P. art. 881.4(D); State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1219. Factors the court may consider in reviewing the sentencing judge's discretion are: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Ulmer, 99-1079 (La.App. 5 Cir. 1/25/00), 751 So.2d 1017, 1019.
On July 10, 1999, the date of the underlying DWI offense, as well as on the date sentence was imposed, the sentencing provisions of LSA-R.S. 14:98 read, in pertinent part:
E. (1) On a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be sentenced to imprisonment at hard labor for not less than ten nor more than thirty years, and shall be fined five thousand dollars.
. . . .
(3)(a) At least two years of the sentence shall be imposed without benefit of suspension of the sentence, probation or parole. In the discretion of the court, any additional portion or all of the sentence may be imposed without benefit of suspension of sentence, probation or parole. If a portion of the sentence is imposed with benefit of suspension of sentence, probation or parole, the court shall require the offender to participate in a court-approved substance abuse program and a court-approved driver improvement program.
(b) If the offender has previously been required to participate in either or both of such programs pursuant to Subsection D of this Section, at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole.
(c) If the offender has previously been required to participate in either or both of such programs under Subsection B or C of this Section, but not under Subsection D, at least two years of the sentence shall be imposed without *410 benefit of suspension of sentence, probation, or parole.
Defendant does not challenge the term of ten years, the minimum term of imprisonment allowable under the relevant version of the statute. Rather, he complains that the trial court imposed the entire sentence without benefit of parole, probation or suspension of sentence.
Under LSA-R.S. 14:98(E)(3)(a), the trial judge had the discretion to impose the entire sentence without benefit of parole, probation or suspension of sentence. Further, the trial judge gave extensive reasons for the sentence he imposed, noting inter alia, that the defendant "is in need of institutional care which can be best provided under the supervision of the State of Louisiana; that he is a threat and a danger not only to himself but to society." The court also took notice of the fact that defendant had a record of DWIs beyond those alleged in the bill of information. Finally, the trial judge commented, "[Defendant] believes in drinking and driving on the roadways of this city and this Court is not going to give him another opportunity to ride on this highway under the influence of alcohol and kill some little 3-year-old in the process."
We find that, when viewed in its entirety, the record supports the sentence imposed. Further, we find that the trial court did not abuse its discretion in ordering that the entire ten-year term be served without benefit of parole, probation, or suspension of sentence.
Finally, we reviewed the record for errors patent pursuant to La C.Cr.P. art. 920. We found none requiring remand.[8]
CONVICTION AND SENTENCE AFFIRMED.
EDWARDS, J., Dissents.
I concur with the majority that the trial court erred in permitting the State to question Schilling about prior DWI arrests. However, I believe that such error was, taken in context with the remaining evidence at trial, reversible. Conner admitted to the officer that he had imbibed two glasses of wine at lunch. The arresting officer testified that Conner staggered when he exited his vehicle; Schilling testified otherwise. Schilling also testified that he was with Conner during the day and had not seen him drink after lunch. There was no objective evidence of intoxication. While the State may have proven the elements of the crime, its evidence was not overwhelming as it depended chiefly on credibility determinations. In my opinion, the State's line of questioning to Schilling was geared to cast suspicion on his credibility, the extent of which doubt cannot be measured, and tipped the scales in favor of the prosecution. It certainly cannot be ruled out that the court decided that Conner was a bad man who had previously been arrested for similar offenses. Considering *411 all these circumstances, I cannot agree that the verdict was surely unattributable to this error, and would reverse and remand for a new trial.
Therefore, I respectfully dissent.
NOTES
[1] State v. Conner, 00-K-1144, unpublished writ disposition.
[2] On May 24, 2001, the trial court held a hearing to allow the State to perpetuate the testimony of three witnesses for trial. Defense counsel waived defendant's presence at that hearing.
[3] There is no evidence in the record that defendant filed a written motion for new trial as required by La.C.Cr.P. art. 852.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] Furlow stated that he encountered defendant twice after his arrest, at a convenience store on West Esplanade Avenue. On those occasions, defendant's speech was not slurred.
[6] With the defendant's assent, the testimony of these three witnesses was taken on May 24, 2001 and perpetuated for trial.
[7] Our supreme court has held that the language of La. R.S. 14:98 evidences the Legislature's "clear intent" that all prior DWI convictions should be considered when determining the applicable penalty. State v. Woods, 402 So.2d 680, 683 (La.1981). In addition, the statutory language "shows an intent to distinguish these enhancement proceedings from other multiple offender prosecutions." Id. Thus, "it is the number of prior convictions, not their sequence, which determines the appropriate designation of a subsequent offense. [Footnote omitted.]" Id. Thus, the trial judge properly considered both of defendant's September 19, 1991 guilty pleas as predicate DWI offenses.
[8] We note that, although the sentencing transcript shows that the trial court did not properly instruct defendant regarding the time limitations for applying for post conviction relief as required by LSA-C.Cr.P. art. 930.8, the minute entry reflects that the trial court properly "informed the Defendant he/she has... two (2) years after judgment of conviction and sentence has become final to seek post conviction relief." Minor discrepancies between the minute entry and the transcript need not be corrected on appeal where the discrepancy does not cause confusion or ambiguity and where a substantial right of the defendant is not violated. See, State v. Mayer, 98-1311 (La.App. 5 Cir. 9/28/99), 743 So.2d 304, 309 (per curiam); State v. Davis, 01-123, pp. 6-7 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, 130. We find that the discrepancy is not confusing and that the defendant's rights under Article 930.8 are protected by the information in the minute entry, thus, no corrective action is required.