902 So.2d 1061 (2005)
STATE of Louisiana
v.
Wesley GUILLARD.
No. 04-KA-899.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*1066 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis  Appellate Counsel, David Wolff  Trial Counsel, Assistant District Attorneys, Gretna, Louisiana, for Appellee, State of Louisiana.
Laurie A. White, Autumn Town, Lauren E. Williams, New Orleans, Louisiana, for Appellant, Wesley Guillard.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On September 19, 1996, the Jefferson Parish District Attorney filed a bill of information charging defendant, Wesley Guillard, with attempted first degree murder, in violation of La. R.S. 14:27 and La. R.S. 14:30, and aggravated burglary, in violation of LA. R.S. 14:60. Defendant was arraigned and pled not guilty to both charges.
On August 20, 1997, trial on defendant's aggravated burglary charge commenced before a twelve-person jury.[1] On August 21, 1997, the jury returned a verdict of guilty as charged. On October 14, 1997, defendant filed a motion for new trial, which the trial judge denied. Immediately thereafter, defendant waived statutory delays and the trial court sentenced defendant to ten years at hard labor. The trial judge ordered defendant to serve two years of the sentence, and, thereafter, be placed on eight years of active probation. The State objected to the sentence as illegal, which the trial court overruled.
On October 15, 1997, defendant filed a Motion for Appeal.[2] The State, thereafter, filed a habitual offender bill of information, alleging defendant to be a third felony offender.[3] The trial court began habitual offender proceedings on November 18, 1997 but the matter was held open.
On January 5, 1998, defendant filed a Motion to Quash Habitual Offender Bill of *1067 Information, arguing that it was not timely filed. On January 16, 1998, defendant filed a Motion to Quash the Same Bill of Information on the Basis of Double Jeopardy. On January 16, 1998, after a hearing, the trial judge granted defendant's first Motion to Quash finding that the habitual offender bill of information had not been timely filed.
On February 9, 1998, the State filed a Motion to Reconsider the Court's Prior Ruling Granting Defendant's Motion to Quash State's Habitual Bill of Information. On February 19, 1998, the trial judge heard and denied the State's Motion to Reconsider. Further, the trial court also heard and granted defendant's second Motion to Quash finding that double jeopardy precluded the State from pursuing the habitual offender bill. The State sought supervisory review of both of the trial court's rulings in this Court. On April 15, 1998, this Court set aside the trial court judgment and ordered the trial court to complete the habitual offender proceedings. State v. Guillard, 98-201 (La.App. 5 Cir. 4/15/98)(unpublished writ disposition).
On October 1, 1998, the trial court continued with the habitual offender proceedings and found defendant to be a third felony offender. At the hearing, defendant, citing State v. Dorthey, 623 So.2d 1276 (La.1993), moved the court to consider a downward deviation from the statutory minimum sentence when imposing defendant's habitual offender sentence. The trial judge ultimately imposed an enhanced sentence of ten years at hard labor, without benefit of parole, probation, or suspension of sentence.[4]
The State again sought supervisory review in this Court, challenging the sentence as illegal. On August 3, 1999, this Court set aside defendant's habitual offender sentence, remanded for re-sentencing, and ordered the trial court to articulate reasons for its downward deviation from the mandatory minimum sentence. State v. Guillard, 98-1148 (La.App. 5 Cir. 8/3/99)(unpublished writ disposition).
On April 20, 2000, the trial court held defendant's second habitual offender sentencing hearing. The trial judge, who gave extensive reasons for his deviation from the statutory minimum sentence, again imposed a habitual offender sentence of ten years at hard labor without benefit of probation, parole, or suspension of sentence. The State sought supervisory review from the trial court's judgment for a third time.
On June 14, 2000, this Court vacated defendant's second habitual offender sentence and ordered the trial court to re-sentence defendant to "no less than the mandatory minimum sentence under the Habitual Offender Law." State v. Guillard, 00-1088 (La.App. 6/14/00)(unpublished writ disposition). Defendant applied to the Louisiana Supreme Court for writs, which were denied. State v. Guillard, 00-2540 (La.4/12/02), 817 So.2d 1121.
On July 1, 2002, the trial court sentenced defendant to the mandatory minimum sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant made an oral motion for appeal. On May 14, 2004, defendant filed an application for post-conviction relief, seeking an out-of-time *1068 appeal. The trial court granted an out-of-time appeal on May 19, 2004.

Facts
On July 28, 1996, Levar Hill("Hill") was living with Chavon Royal("Royal"), who was his girlfriend at the time, and her son at her apartment on Webster Street in Kenner. That evening, Hill arrived at Royal's apartment at around 11:00 p.m. After Hill went inside the apartment, Royal stayed outside to smoke a cigarette.
When Hill went outside sometime later, he saw Wesley Guillard, who he had known since junior high school, on a bicycle on the sidewalk in front of Royal's apartment. Hill admittedly did not want Wesley Guillard speaking to Royal and told him to leave.[5] Hill and Wesley Guillard exchanged words, Guillard left, and Hill and Royal went inside the apartment.
Twenty to thirty minutes later, Hill and Royal heard a knock on the front door. Hill, who was shirtless, opened the door slightly. Wesley Guillard and, his cousin, Alan Guillard[6] pushed the door open and entered the apartment. Wesley Guillard pushed Hill onto a nearby couch. At first, Royal thought Wesley Guillard was punching Hill, but she realized defendant was stabbing Hill when she saw that Hill was bleeding.
Royal testified that she was restraining Alan Guillard, who was standing nearby holding a large knife. Both Hill and Royal reported that Royal was able to hold Alan back because he was intoxicated. Royal testified that Alan Guillard did not strike Hill at all. Further, Alan Guillard refused to hand over the large knife that he was carrying when Wesley demanded the knife.
At some point, Hill managed to get away from Wesley Guillard, grab Royal and her son, and run into the bedroom. Hill attempted to lock the bedroom door, but Wesley Guillard knocked it down and continued the attack. Guillard only stopped the attack after Hill picked up a broken picture frame from the floor, swung it, and cut Wesley Guillard on the hand. The Guillards then fled. Later, Royal testified that Wesley Guillard stabbed Hill six or seven times. Hill testified that Wesley Guillard stabbed him a total of five times and told Hill that he was going to kill him.
Fearing the men would return, Hill and Royal took her son and left the apartment. They flagged down a passing motorist and asked for a ride to a hospital. When Hill and Royal spotted police officers at a nearby E-Z Serve convenience store, they asked the driver to stop so they could report the incident to the police.
Officer John Louis of the Kenner Police Department testified that, at about 11:30 p.m. on July 28, 1996, he was investigating an unrelated armed robbery at an E-Z Serve convenience store on Airline Highway. Officer Louis was handling that crime scene when Hill and Royal approached him. Royal told Officer Louis that Hill had been stabbed. After observing Hill, Officer Louis called for an ambulance, which transported Hill to Kenner Regional Medical Center. Once Hill's condition was stable, he was transferred to *1069 Charity Hospital in New Orleans where he was treated for stab wounds.[7]
After Hill left in the ambulance, Officer Louis went to Royal's apartment to secure the crime scene and investigate the incident. Based on his investigation, Officer Louis arrived at Wesley and Alan Guillard as suspects.
Sergeant Corey Broussard of the Kenner Police Department testified that, on the night of the incident, he drove Royal to a house where she believed Wesley Guillard was living. The occupants of the house told the officer that Wesley Guillard did not live there. Sergeant Broussard then decided to bring Royal to her relatives' house. While they were en route, Royal saw Wesley Guillard walking and pointed him out to the officer. Sergeant Broussard called for assistance from additional officers. Sergeant Broussard placed Wesley Guillard under arrest and other officers transported him to the Kenner lockup.
Officer Louis testified that defendant had a cut on his left hand that required stitches so he transported defendant to Charity Hospital the morning after the offense and his arrest. Physicians documented and treated a laceration, which was three centimeters long and one-quarter centimeter deep, on the back of the defendant's left hand.
Officer Louis testified that he interviewed Hill at a later date, and Hill named defendant and Alan Guillard as his attackers. Hill also identified defendant and Alan Guillard in a photographic lineup. At that time, Alan Guillard was still at large. Further, at trial, Hill identified defendant as the man who forced his way into the apartment and stabbed him. Royal also identified defendant in court as one of Hill's attackers.
Suzette Hill, who is Levar Hill's mother, testified that she received a letter postmarked January 30, 1997, which purportedly was from the defendant. She read the letter aloud in court. In the letter, defendant admitted to the stabbing, and apologized for the injuries he had caused.
Defendant's mother, Janice Guillard, testified on his behalf at trial. She stated that she had received a telephone call from Hill. He told her that he would refuse to testify against defendant in exchange for $1,500.00. Ms. Guillard testified that she did not give Hill any money. After examining the evidence presented, the twelve-person jury unanimously found defendant guilty as charged.
On appeal, defendant challenges his underlying conviction, habitual offender adjudication, and enhanced sentence. He raises seven assignments of error including: denial of his right to due process of law guaranteed under Article I, Section 2 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments to the United States Constitution "as he did not have counsel available following the imposition of the life sentence due to his counsel's grave health concerns which rendered her ineffective" under the Sixth Amendment to the United States Constitution; denial of his right to due process of law guaranteed under Article I, Section 2 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments to the United States Constitution when he was *1070 adjudicated a third habitual offender, as the State failed to prove the predicate convictions required under the multiple bill of information; denial of his right to due process of law guaranteed under Article I, Section 2 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments to the United States Constitution when he was adjudicated a third habitual offender, as the State failed to timely file the multiple bill of information; denial of his right to due process of law guaranteed under Article I, Section 2 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments to the United States Constitution, as there was insufficient evidence to support the guilty verdict; appellant's enhanced sentence of life imprisonment as a third felony offender was excessive in violation of Article I, Section 20 of the Louisiana Constitution of 1974 and the Eighth and Fourteenth Amendments to the United States Constitution; the trial court committed reversible error by admitting a letter allegedly written by Appellant in violation of Article I, Sections 2 and 16 of the Louisiana Constitution of 1974 and the Sixth and Fourteenth Amendments to the United States Constitution; and any errors patent contained in the record pursuant to Article 920(2) of the Louisiana Code of Criminal Procedure.
In his fourth assignment of error, defendant contends that the evidence the prosecution presented at trial was insufficient to support a conviction for aggravated burglary. He argues that the two eyewitnesses, Chavon Royal and Levar Hill, were not credible, as their testimony differed in some respects.
When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0100 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396. We will thus begin our review by considering defendant's fourth assignment of error.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 676, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291 (per curiam). Aggravated burglary is the unauthorized entering of any inhabited dwelling with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon, or commits a battery upon any person while in such place, or while entering or leaving the place. La. R.S. 14:60.
First, the State had to prove that defendant committed an unauthorized entry of an inhabited dwelling. Royal testified that the apartment in question was her primary residence. Hill testified that he spent every night at Royal's apartment when they were dating. Both Royal and Hill testified that defendant and Alan Guillard entered the apartment by force. Royal specifically stated that neither she nor Hill gave either defendant or Alan Guillard permission to enter the residence. The State thus clearly established the elements of unauthorized entry into an inhabited dwelling.
*1071 Next, the State had to prove one of the other elements of the crime, including that the offender was armed with a dangerous weapon or committed a battery upon any person while in such place or while entering or leaving the place. Battery is "the intentional use of force or violence upon the person of another." La. R.S. 14:33. Aggravated battery is defined as "a battery committed with a dangerous weapon." La. R.S. 14:34. Both Hill and Royal testified that, after the defendant entered the apartment, defendant stabbed Hill multiple times. Dr. Young, one of Hill's treating physicians, testified that Hill lost a great deal of blood as a result of stab wounds that he received on the night in question. The State presented sufficient evidence to prove that defendant committed a battery on Hill while inside the apartment.
Further, although defendant argues that the discrepancies between Hill and Royal's testimony demonstrate their lack of credibility, the jury apparently found the two eyewitnesses to be credible. It is well established that the credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be re-weighed on appeal. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 886.
Moreover, where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, it goes to the weight of the evidence, and not its sufficiency. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, 00-0150 (La.6/30/00), 765 So.2d 1066. Based on the foregoing, we find that, viewing the evidence in the light most favorable to the prosecution, the State presented sufficient proof for any rational trier of fact to find the essential elements of aggravated burglary beyond a reasonable doubt sufficient under the Jackson standard.
Turning now to defendant's remaining assignments of error, defendant argues in his first assignment that he was denied his right to due process of law guaranteed under Article I, Section 2 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments to the United States Constitution as "he did not have counsel available following the imposition of the life sentence due to his counsel's grave health concerns which rendered her ineffective under the Sixth Amendment to the United States Constitution." Defendant complains that he was deprived of effective assistance of counsel following the imposition of his life sentence on July 1, 2002 because his attorney, who was gravely ill at that time, was unavailable to him during her illness. Defendant argues that he was prejudiced because his attorney did not file a timely motion to reconsider sentence or a timely motion for appeal.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution provide that a defendant is entitled to effective assistance of counsel. In order to show ineffective assistance of counsel, a defendant must demonstrate (1) that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). In order to show prejudice, the defendant must show that, *1072 but for his counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2068.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. When the record contains sufficient evidence to rule on the merits of the claim, however, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1247, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). We find that the record in this case is sufficient to rule on the merits of defendant's claim.
The record reflects that, at defendant's final sentencing proceeding, his attorney stated, following sentencing, "Your Honor, defense intends to appeal the sentencing and we'd like ... a return date on this matter." Counsel's statement was sufficient to constitute a timely oral motion for appeal.[8] We find, thus, defendant failed to show that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms because she adequately preserved defendant's appeal rights. Moreover, defendant has not demonstrated prejudice since he is appealing his conviction.
Regarding defendant's claim that his attorney was ineffective for failing to file a motion to reconsider his enhanced sentence, the record does not reveal that defense counsel filed a motion to reconsider defendant's enhanced sentence. We note, however, that defendant fails to state how he was prejudiced by the inaction. First, this Court routinely reviews sentences for constitutional excessiveness despite the defendant's failure to file a motion to reconsider sentence. State v. Williams, 00-1850 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 794, writ denied, 01-1432 (La.4/12/02), 812 So.2d 666. Second, pursuant to his fifth assignment of error, we have reviewed defendant's claim that his enhanced sentence is excessive, infra. Based on the foregoing, we cannot conclude that defendant demonstrated that he received ineffective assistance of counsel after his enhanced sentencing.
In his second assignment of error, defendant argues that he was denied his right to due process of law guaranteed under Article I, Section 2 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments to the United States Constitution when he was adjudicated a third habitual offender, as the State failed to prove the predicate convictions required under the multiple bill of information. In order for a defendant to be found a habitual offender, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Nguyen, 04-321 (La. App. 5 Cir. 9/28/04), 888 So.2d 900, 912. The State must further show that the prior convictions fall within the ten-year cleansing period prescribed by La. R.S. 15:529.1(C). State v. Hollins, 99-278 (La. App. 5 Cir. 8/31/99), 742 So.2d 671, 685, *1073 writ denied, 99-2853 (La.1/5/01), 778 So.2d 587. Where prior convictions resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Shelton, 621 So.2d 769 (1993).
Defendant argues that the State did not prove his identity with respect to or existence of either of his alleged convictions.[9] The State may establish identity by various means, such as the testimony of witnesses to prior offenses, expert testimony matching fingerprints of the accused with those in the record of prior proceedings, or photographs contained in a duly authenticated record. State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 404, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
In this case, the State alleged in the habitual offender bill of information that defendant had two previous felony convictions: first, a 1995 guilty plea to possession of cocaine in St. Charles Parish, Division "D," docket number 95-0693, and, second, a 1993 guilty plea to obstruction of justice in Jefferson Parish, Division, "E," docket number 93-4950. At the habitual offender hearing, the State offered the testimony of Captain Merril Boling, a latent fingerprint expert with the Jefferson Parish Sheriff's Office. Captain Boling identified State's Exhibit 1 as a set of fingerprints that he had obtained from defendant in court at the outset of the habitual offender proceedings.
Regarding the 1995 predicate conviction, Captain Boling identified State's Exhibit 2 in globo as documentation of defendant's 1995 predicate conviction. First, the State introduced a certified copy of the bill of information filed in the Twenty-Ninth Judicial District Court for the Parish of St. Charles, Division "D," bearing docket number 95-0693, charging Wesley Guillard with possession of cocaine on or about October 19, 1995. The bill of information lists Guillard's Bureau of Identification ("B of I") number is listed as 35894, his date of birth as "11-7-74," his address, and social security number.
The State also introduced as part of Exhibit 2, a certified copy of court minutes entitled "STATE OF LA. VS. Wesley Guillard," docket number 95-0693. The minute entry for November 15, 1995 reflects that the original charge of possession with intent to distribute cocaine was amended to simple possession of cocaine. That entry also shows that the defendant, who was represented by an attorney, was advised of his rights, waived said rights, and pled guilty pursuant to a plea agreement.
The State also presented as part of Exhibit 2, certified copies of a well-executed plea agreement form and a guilty plea form bearing docket number 95-0693. The plea agreement and guilty plea forms, which were signed by the assistant district attorney, defense counsel, defendant, and the trial judge, show that Wesley Guillard pled guilty to simple possession of cocaine on November 15, 1995 in exchange for a suspended sentence and active probation.
Finally, the State presented, as part of Exhibit 2, a certified copy of a St. Charles Parish Sheriff's Office arrest register dated October 19, 1995, listing Wesley Guillard as arrestee charged with possession with intent to distribute cocaine. The *1074 form bears that same arrest date and B of I number as the bill of information. The arrest register includes two "mug shots" from the St. Charles Parish Sheriff's Department of "Wesley Guillard," with the same arrest date, B of I number, and a date of birth. The arrest register contains certified copies of fingerprints. At the habitual offender proceeding, Captain Boling compared the fingerprints on State's Exhibit 1 with those included in State's Exhibit 2. Captain Boling testified that the fingerprints were made by the same person.
Defendant argues that the State failed to prove identity because there were no fingerprints on the bill of information connected with the 1995 conviction. However, this court has held that testimony comparing a defendant's current fingerprints with those found on prior arrest records is sufficient to prove that the defendant was the person convicted of a prior felony. State v. Baker, 00-1050 (La. App. 5 Cir. 11/15/00), 776 So.2d 1212, 1217, writ denied, 01-0044 (La.11/16/01), 802 So.2d 621. Here, the arrest register was connected to the bill of information by the charged offense, the name of the defendant, his date of birth, Social Security number, and "B of I" number.
Defendant also argues that the State did not adequately prove that there was a conviction in case number 95-0693. On the contrary, the plea agreement form and the guilty plea form contain the same docket number, the same charge and the same date of commission as the bill of information. Additionally, the plea forms show that defendant was advised of the three Boykin rights: the right to trial by jury, the right of confrontation, and the privilege against self-incrimination. Defendant incorrectly alleges that the plea documents list a different section of court than the one alleged in the habitual offender bill. In the record, Division "D" was the section of court listed in the habitual offender bill, the minute entries, and the plea forms. Based on the foregoing, we conclude that the State sufficiently proved not only that defendant was the same person that pled guilty to the 1995 predicate conviction but also the existence of the 1995 conviction.
Regarding the 1993 predicate conviction, Captain Boling identified State's Exhibit 3 in globo as documentation of defendant's 1993 predicate conviction. First, the State presented a certified copy of a bill of information filed in the Twenty-Fourth Judicial District Court, Division "E," docket number 93-4950, charging Wesley Guillard with obstruction of justice, in violation of La. R.S. 14:130.1. The bill lists Wesley Guillard's date of birth as "11/07/74." The complaint number on the bill is G-15020-93.
The State also presented a certified copy of a Jefferson Parish Sheriff's Office arrest register, listing Wesley Guillard (alias Westley Guillard), with the same birth-date, charged as accessory to first degree murder and obstruction of justice under the same complaint number. The State presented certified copies with a two separate sets of fingerprints that were attached to the arrest register. The fingerprints bear Wesley Guillard's signature in the box entitled "Signature of Person Fingerprinted." The arrest register is linked to the bill of information by the complaint number, the defendant's name, date of birth, the offense charged, and the date of the offense.
At the habitual offender proceeding, Captain Boling compared the fingerprints on State's Exhibit 1 with the fingerprints included in State's Exhibit 3. Captain Boling testified that they were made by the same person.
*1075 Further, the State presented, as part of State's Exhibit 3, a certified copy of a guilty plea form bearing case number 93-4950 dated December 8, 1993. It shows that Wesley Guillard, date of birth "11/07/74," entered a guilty plea to a charge of obstruction of justice. The form, which bears signatures of defense counsel, defendant, and the trial judge, reflects that the defendant was advised of his rights under Boykin. A certified copy of a commitment attached to State's Exhibit 3 shows that Wesley Guillard pled guilty to obstruction of justice in district court case number 93-4950 on December 8, 1993. The commitment indicates that the three-year sentence imposed was suspended, and Guillard was placed on probation. The guilty plea form and the commitment are linked with the bill of information by the defendant's name and date of birth, the offense, and the police item number. Based on the foregoing, we conclude that the State sufficiently proved not only that defendant was the same person that pled guilty to the 1993 predicate conviction but also the existence of the 1993 conviction.
In his third assignment of error, appellant argues that he was denied his right to due process of law guaranteed under Article I, Section 2 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments to the United States Constitution when he was adjudicated a third habitual offender, as the State failed to timely file the multiple bill of information. Defendant specifically argues that his habitual offender sentence should be vacated because he was released from the custody of the Department of Corrections before the State filed the habitual offender bill of information, rendering the bill untimely under State ex rel. Williams v. Henderson, 289 So.2d 74 (La. 1974) and State ex rel. Glynn v. Blackburn, 485 So.2d 926 (La.1986). The State responds that this Court has previously ruled on this issue and, as such, should not be reconsidered by this Court on appeal.
Our review of the record reflects that the State noticed its intent to file a habitual offender bill of information at defendant's underlying sentencing proceeding on October 14, 1997. The State subsequently filed a habitual offender bill, alleging defendant to be a third felony offender. The hearing was held on November 18, 1997.
After the State put on its evidence, defense counsel argued that one of the predicate convictions alleged by the State was defective. The judge ordered counsel to brief his arguments, and held the matter open. On January 5, 1998, defendant filed a Motion to Quash Habitual Offender Bill of Information, arguing the bill was not timely filed. The judge heard arguments and granted the motion.
On February 9, 1998, the State filed a Motion to Reconsider the Court's Prior Ruling Granting Defendant's Motion to Quash State's Habitual Offender Bill of Information. That motion was argued and denied on February 19, 1998. The State applied for writs to this Court. On April 15, 1998, this Court granted the State's writ application and ordered the trial court to conclude the habitual offender proceeding. State v. Guillard, 98-201 (La.App. 5 Cir. 4/15/98)(unpublished writ disposition). In its writ disposition, this Court wrote, in part:
The state notified defendant on the day that he was sentenced that they intended to file a habitual offender bill of information against him. The bill of information was filed within about three weeks of sentencing and defendant was moved from the Department of Corrections one week after that. However, defendant was not released from prison. He was merely relocated from the Department *1076 of Corrections to a parish facility. A probation hold was placed on defendant for charges in St. Charles Parish and there are other charges pending against defendant in Jefferson Parish. Furthermore, defendant was not fully released form [sic] the custody of the Department of Corrections. The full term of the defendant's sentence extended until July 27, 1998. Defendant was discharged from the Department of Corrections facility on Good Time Parole Status. Early release because of earned "good time" is the same as release on parole. La. R.S. 15:571.5. A person released on parole remains within the custody of the Department of Corrections for the remainder of the original full term of sentence. La. R.S. 15:574.5 & 574.7.[sic]
Therefore, we find no unreasonable delay in the state's actions in bringing the habitual offender proceedings and further, defendant had not been released from custody, interrupting completion of the proceedings.
Under the "law of the case" doctrine, an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. State v. Junior, 542 So.2d 23, 27 (La.App. 5 Cir.1989), writ denied, 546 So.2d 1212 (La.1989). Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. In re K.R.W., Jr., 03-1371 (La.App. 5 Cir. 5/26/04), 875 So.2d 903, 905.
On appeal, defendant argues, as he did in his motion to quash the habitual offender bill, that the jurisprudence in effect at the time the State filed the habitual offender bill of information required the State to complete the habitual offender proceeding before a defendant was released from the custody of the Department of Corrections. This Court considered defendant's exact argument in its previous ruling on this issue. On appeal, defendant does not present evidence to show that this Court's prior disposition was patently erroneous. Further, this Court's reasoning is consistent with the current state of the jurisprudence on the issue, as well as the jurisprudence in effect at that time. See, State v. Muhammad, 03-2991 (La.5/25/04), 875 So.2d 45; State v. Conrad, 94-232 (La.App. 5 Cir. 11/16/94), 646 So.2d 1062, writ denied, 94-3076 (La.4/7/95), 652 So.2d 1345. Thus, we cannot conclude that our prior ruling was patently erroneous and produced an unjust result. Accordingly, we decline to reconsider our prior ruling on the same issue in this case.
Moreover, even if we were to address defendant's argument for a second time, we would find it lacked merit. Our review of the record reveals that, contrary to his claim, defendant had not been released from the custody of the Department of Corrections before the habitual offender hearing. After defendant was sentenced for his underlying aggravated burglary conviction in October of 1997, he was awaiting trial on a pending second-degree battery conviction. Although defendant was physically relocated to a parish correctional facility on November 12, 1997 to await trial on pending charges, he was not released from Department of Corrections' custody. Even after he was released from Department of Corrections' physical custody, defendant was still on "good time parole status" until July 27, 1998. We find that the State, which filed the habitual offender bill of information no later than November 17, 1997, proceeded in a timely manner and without unreasonable delay.
In his fifth assignment of error, defendant contends that his sentence of life imprisonment, as determined by the *1077 trial Court's adjudication of a third felony offender, was excessive in violation of Article I, Section 20 of the Louisiana Constitution of 1974 and the Eighth and Fourteenth Amendments to the United States Constitution. Defendant specifically complains that his third offender life sentence, the mandatory minimum term under the Habitual Offender Law, is constitutionally excessive. He argues that the trial court should have been allowed to deviate below the mandatory minimum due to his personal history. The State responds that this issue was addressed in a prior ruling by this Court, and, should not be revisited.
On October 1, 1998, the trial court sentenced defendant, as a third felony offender, to ten years at hard labor, without benefit of parole, probation, or suspension of sentence. The State applied to this Court for supervisory review. In State v. Guillard, 98-1148 (La.App. 5 Cir. 8/3/99)(unpublished writ disposition), this Court found that the trial judge did not adequately articulate reasons for deviating below the mandatory minimum sentence for a third-felony offender. This Court vacated defendant's enhanced sentence and remanded for re-sentencing in light of the applicable jurisprudence.
On April 20, 2000, the trial court held another sentencing hearing. Defendant presented testimony from his sister, Stephanie Newport, a pharmacist. She stated that she and defendant had been raised in a sadistic household with an alcoholic father who battered their mother. Ms. Newport left home at age seventeen after their father raped her at gunpoint, but defendant remained in the household. Their father, who was a career criminal, took defendant along when he committed crimes. Their father was shot and killed in the family's home in 1990. Defendant discovered his body.
At the close of the proceeding, the trial judge again imposed a sentence of ten years at hard labor. This time, the trial judge gave extensive reasons for his deviation below the statutory minimum sentence. He noted that he had received a letter from defendant's aunt, who is a psychotherapist, informing him that defendant had been exposed to domestic violence from a young age. He also took into account the fact that defendant discovered his father's body, and that he had been hospitalized at DePaul Hospital during his childhood. The trial judge found that defendant suffered from poor self-esteem, extreme anger, and the lack of a positive father figure, which rendered defendant unable to make good decisions. The trial judge further stated:
Mr. Guillard is twenty-five years old. I would consider him a young defendant and from what I've heard up to this point is there's a very good case for rehabilitation and there's also a support system within a family of professionals who might be able to assist in that rehabilitation.
So, therefore, I would find the harshness of a life sentence based upon the previous convictions of possession of cocaine, obstruction of justice, and aggravated burglary to be not only reprehensible, but morally reprehensible. I see nothing that is accomplished in imposing a sentence of that magnitude. I believe that it's too severe in light of the circumstances and in "State versus Burton," the courts have held that only the most egregious violators should be subjected to such maximum sentences. And I don't find that this is an egregious violator in terms of those individuals whom I think the statute was actually enacted to protect our society from.
I don't find that a life sentence under these circumstances make[s] any measurable contribution to the acceptable *1078 goals of punishment and I find it being nothing more than a purposeful imposition of pain and suffering and it is grossly out of proportion with the severity of the crime.
The State again applied for writs from the trial court's judgment. In State v. Guillard, 00-1088 (La.App. 5 Cir. 6/13/00)(unpublished writ disposition), this Court granted writs and vacated the trial court's sentence, stating:
We find that, especially in light of the heinous nature of defendant's third offense, the trial court failed to demonstrate the rare circumstances that are required for departure from the mandatory guidelines prescribed by the Habitual Offender Law. La. R.S. 15:529.1(A)(1)(b)(ii); State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. Accordingly, we remand this matter and order that the trial court resentence the defendant to no less than the mandatory minimum sentence under the Habitual Offender Law.
The Louisiana Supreme Court thereafter denied defendant's writ application. State v. Guillard, 00-2540 (La.4/12/02), 817 So.2d 1121.
On July 1, 2002, the trial court re-sentenced defendant to the mandatory term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[10] The trial judge imposed sentence without entertaining any further evidence or argument.
As previously noted, under the "law of the case" doctrine, an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. State v. Junior, 542 So.2d at 27. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. In re K.R.W., Jr., 875 So.2d at 905.
On appeal, defendant argues, as he did previously, that the facts and circumstances "surrounding Appellant's sentence justify the trial court's exercise of discretion in sentencing Appellant below the legislative mandatory minimum" required by La. R.S. 15:529.1. This Court considered defendant's exact argument in its previous ruling on this issue. On appeal, defendant does not present evidence to show that this Court's prior disposition was patently erroneous *1079 and produced an unjust result. Accordingly, we decline to reconsider our prior ruling on the same issue in this case.
Moreover, even if we were to reconsider our original ruling, we cannot say that we would find merit in defendant's argument. The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Since the Louisiana Supreme Court has found that La. R.S. 15:529.1, Louisiana's Habitual Offender Law, is constitutional in its entirety, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 675. The Louisiana Supreme Court has recognized, however, that a mandatory minimum sentence under the Habitual Offender Law may be reviewed for constitutional excessiveness. State v. Johnson, 709 So.2d at 676.
A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Robicheaux, 412 So.2d 1313 (La.1982); State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. With regard to the habitual offender statute, the burden is on the defendant to rebut the presumption of constitutionality by showing he is exceptional, i.e., because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of each case. State v. Johnson, 709 So.2d at 676.
A sentencing court may depart from the statutory minimum sentence if it finds that a defendant has presented clear and convincing evidence on the record that rebuts the presumption of constitutionality.[11]State v. Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 226, writ denied, 02-1489 (La.5/9/03), 843 So.2d 388. If the trial court finds clear and convincing evidence that justifies a sentence below the mandatory minimum, the court cannot impose whatever sentence it feels is appropriate. Rather, the trial court must impose the longest sentence that is not constitutionally excessive. State v. Johnson, 709 So.2d at 677; State v. Simmons, 02-960 (La.App. 5 Cir. 1/28/03), 839 So.2d 239, 244, writ denied, 03-0841 (La.10/31/03), 857 So.2d 473. The Supreme Court has cautioned that downward departures from mandatory sentences should only be made in rare cases. State v. Johnson, 709 So.2d at 676-677.
In this case, defendant presented testimony that he struggles with substance abuse issues. His sister testified about their tumultuous childhood with an abusive, often criminal, father. Defendant argued that his age and tragic events in his life warranted a downward departure from the mandatory life sentence.
We cannot say, however, that the defendant offered evidence which rebutted the presumption of constitutionality. The testimony of the victims showed that the actions of this defendant during the underlying aggravated burglary put three people, including a child, in grave danger. *1080 His actions in stabbing the victim caused the victim to undergo surgery and hospitalization. Further, although the State only presented evidence of two predicate convictions, the record discloses that defendant had other felony convictions and one juvenile adjudication. Accordingly, we cannot say that the record contains clear and convincing evidence to rebut the presumption of constitutionality and justify a sentence below the mandatory minimum.
In his sixth assignment of error, defendant argues that the trial court committed reversible error by admitting a letter allegedly written by Appellant in violation of Article I, Sections 2 and 16 of the Louisiana Constitution of 1974 and the Sixth and Fourteenth Amendments to the United States Constitution.
Defendant argues that the State failed to provide proper authentication for a letter, which was introduced into evidence as State's Exhibit 24, purportedly written by defendant in jail and mailed to Levar Hill's mother, Suzette Hill, in January, 1997.
At trial, Ms. Hill identified the document and the accompanying envelope as "a letter that Mr. Wesley mailed to me." She testified that she had kept it in a filing cabinet since January, 1997. She stated that the letter was postmarked January 30, 1997. When the prosecutor asked Ms. Hill to read the letter into the record, the defense objected on grounds that the State had failed to lay the proper foundation for the letter's admission. The court overruled the objection and allowed the jury to review copies of the letter and the addressed side of the envelope over defense counsel's objection. The trial court allowed Ms. Hill to read the letter aloud to the jury. In the letter, the writer, who identified himself as Wesley Guillard, admitted that he fought with Levar Hill over Chavon Royal. The author apologized to Ms. Hill for the stab wounds her son had sustained.
On appeal, defendant renews his claim that the letter was inadmissible because the State failed to lay the proper foundation. Before demonstrative evidence can be admitted at trial, it must be properly authenticated. La. C.E. art. 901; State v. Cosey, 97-2020 (La.11/28/00), 779 So.2d 675, 678, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001). The authentication of evidence refers to the process by which the proponent of the evidence proves that it is what he claims it to be. State v. Taylor, 04-90 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 969, writ denied, 04-1629 (La.11/19/04), 888 So.2d 193.
The initial determination regarding admissibility is made by the trial court, based upon La. C.E. art. 901(A), which provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(B) further provides, in pertinent part:
Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Article:
* * *
(2) Nonexpert opinion on handwriting. Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.
(3) Comparison by trier or expert witness. Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated.
*1081 Defendant argues that the State failed to connect him to the letter by any of the legally accepted means. We agree. The prosecutor did not present handwriting exemplars from defendant for the jurors or an expert witness to compare with the letter. Further, the prosecutor did not produce a witness familiar with defendant's writing to vouch for the authenticity of the letter.
In State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, 00-0150 (La.6/30/00), 765 So.2d 1066, this Court found that a handwritten document purportedly written by the victim was not admissible in the defendant's incest prosecution because the defendant did not establish the origin of the document or who wrote it, and, thus, failed to authenticate it. Similarly, in this case, the State failed to establish the origin of the letter. We conclude, therefore, that the trial court erred in allowing the letter to be admitted in evidence.
We find, however, that any error was harmless because the verdict was surely unattributable to the error. See, Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Even without the letter, the evidence of defendant's guilt was substantial. The eyewitness testimony of Hill and Royal would have been sufficient to support a conviction.
Finally, we have reviewed the record for errors patent pursuant to La.C.Cr.P. art. 920. After reviewing all of the sentencing transcripts, we find that the trial court failed to advise defendant of the two-year prescriptive period for applying for post-conviction relief under La.C.Cr.P.art. 930.8.[12] Accordingly, we remand this matter to the trial court with instructions to provide defendant with notice of the prescriptive period, and to file written proof of such notice in the record. See, State v. Walker, 03-1072 (La.App. 5 Cir. 12/30/03), 865 So.2d 172, 175.
AFFIRMED; REMANDED FOR COMPLIANCE WITH LA.C.Cr.P. ART. 930.8.
NOTES
[1] That same day, before trial commenced, the trial court granted the State's oral motion to sever the two counts and the State amended the bill of information adding "Wesley Williams" as defendant's alleged alias. On August 21, 1997, the State also amended the bill of information to correct the spelling of the alleged victim's name from Chavon Royas to Chavon Royal.
[2] Defendant's Motion for Appeal, which does not bear the trial judge's signature, is included in the record.
[3] The habitual offender bill of information included in the record does not bear a stamp to indicate its filing date.
[4] The trial judge originally imposed a sentence of fifteen years at hard labor, suspended that sentence, and placed defendant on active probation for ten years. After the State objected, the trial judge took the matter under advisement and conferred with the prosecutor and defense attorney off the record. The trial judge thereafter sentenced defendant to ten years at hard labor without benefit of probation, parole, or suspension of sentence.
[5] Royal stated that she had known Wesley Guillard for a few years before this incident. She also stated that she believed, from comments that Wesley Guillard has made to her in the past, that Wesley wanted a relationship with her. She did not, however, want to date him.
[6] Royal testified that she had previously dated Alan Guillard. Royal further stated that Alan had broken into her residence on one occasion in the past.
[7] Dr. Kirstin Young, who was working in the emergency department at Charity during the late night and early morning of July 28 and 29, 1996, was involved in Hill's treatment. Dr. Young reported that Hill presented with two stab wounds and a partially collapsed lung. According to Dr. Young, Hill lost a total of 1500 cc's of blood before he was taken into surgery. During surgery, doctors discovered and removed a blood clot from Hill's lung. Hill was discharged from Charity on August 2, 1996.
[8] See, La.C.Cr.P. art. 914(A). Compare, State v. Granier, 03-447, p. 4 (La.App. 5 Cir. 9/30/03), 857 So.2d 1176, 1178, in which this Court found that the defense attorney's statement that he wished to reserve his appeal right under Crosby was sufficient to constitute a timely oral motion for appeal.
[9] Defendant does not allege any deficiency in proof that the alleged convictions fell within the applicable cleansing period.
[10] The Louisiana Supreme Court has held that the applicable sentencing scheme is the one in effect at the time the offense is committed. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 521. On September 19, 1996, when the instant offense was committed, La. R.S. 15:529.1(A)(1)(b)(ii) provided:

A. (1) Any person who, after having been convicted within this state of a felony ... or a crime of violence as listed in Paragraph (2) of this Subsection ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
* * *
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
* * *
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Defendant's underlying conviction was for aggravated burglary, which is defined as a crime of violence under La. R.S. 14:2(13)(v). The defendant's two predicate convictions were for possession of cocaine, a violation of the Uniform Controlled Dangerous Substances Law and obstruction of justice.
[11] The "trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant." State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 927, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477.
[12] The commitment corresponding to defendant's July 1, 2002 sentencing reflects that defendant was advised of the prescriptive period under Article 930.8. Where the transcript and the minute entry conflict, however, the transcript prevails. State v. Lynch, 441 So.2d 732 (La. 1983).